

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-15-00386-CV

### IN THE INTEREST OF J.R.S.

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2014-PA-00465
Honorable Richard Garcia, Judge Presiding

Opinion by: Patricia O. Alvarez, Justice

Sitting: Karen Angelini, Justice
Patricia O. Alvarez, Justice
Jason Pulliam, Justice

Delivered and Filed: September 23, 2015

AFFIRMED

B.J.D. appeals the trial court's order terminating his parental rights to minor child J.R.S. In his sole issue on appeal, B.J.D. asserts the evidence was neither legally nor factually sufficient for the trial court to find by clear and convincing evidence that terminating his parental rights was in J.R.S.'s best interests. We conclude the evidence is both legally and factually sufficient, and we affirm the trial court's order.

### FACTUAL AND PROCEDURAL BACKGROUND

On November 14, 2013, the Department of Family and Protective Services received a referral alleging neglectful supervision of two-year old J.R.S. On November 23, 2013, Anisha McCord notified the Department that J.R.S's mother, Rachel, had placed J.R.S. in her custody. The Department continued attempts to assist Rachel; however on January 3, 2014, Rachel

completed an Authorization Agreement for Nonparent Relative or Voluntary Caregiver authorizing McCord to care for J.R.S.

On February 27, 2014, the Department filed the petition to remove J.R.S. from her mother's custody for allegations of neglectful supervision and physical neglect. The trial court granted the petition and appointed the Department as temporary sole managing conservator of J.R.S.

On March 25, 2014, B.J.D., the alleged father, announced not ready and denied paternity. On April 9, 2014, the trial court ordered genetic testing. A family service plan for B.J.D. was prepared by the Department and submitted to the trial court on May 9, 2014. The following goals were outlined for B.J.D.:

(1)     show an ability to parent and protect J.R.S.;

(2)     manage income to meet the basic needs of J.R.S.;

(3)     demonstrate an ability to provide J.R.S. with adequate care and nurturance;

(4)     demonstrate an ability to protect J.R.S from future abuse or neglect and show concern for future safety of J.R.S.;

(5)     maintain housing that is safe and free of hazards;

(6)     provide protection, food, and shelter for J.R.S; and

(7)     demonstrate an ability to use willing friends and resources to obtain necessary support.

On May 19, 2014, B.J.D. appeared for a scheduling hearing and signed the family plan. On December 1, 2014, the genetic testing confirmed B.J.D. was J.R.S.'s biological father. He was adjudicated as J.R.S.'s father on February 20, 2015.

After several permanency hearings and a trial on the merits, on June 4, 2015, the trial court terminated B.J.D.'s parental rights to J.R.S. based on B.J.D.'s

(1)     Constructive abandonment [of J.R.S.]; department has made reasonable efforts to return [J.R.S.] to the father, the father has not regularly visited or maintained significant contact with [J.R.S.], and the father has demonstrated an inability to provide [J.R.S.] with a safe environment, pursuant to 161.001(1)(N); and

(2) Fail[ure] to comply with the provisions of a court order that specifically established the actions necessary for the father to obtain the return of [J.R.S.] who has been in the permanent or temporary managing conservatorship for the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent for the abuse or neglect of the child pursuant to 161.001(1)(O).

*See* TEX. FAM. CODE ANN. § 161.001(1)(N), (O) (West 2014). The trial court also found such termination was in J.R.S.'s best interests. *See id.* § 161.001(2).

B.J.D. does not challenge the trial court's findings concerning the statutory grounds for involuntary termination of his parental rights. *See* TEX. FAM. CODE ANN. § 161.001(1); *see also In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). Instead, he argues the trial court erred because the evidence was neither legally nor factually sufficient for it to find by clear and convincing evidence that terminating his parental rights was in J.R.S.'s best interests. *See* TEX. FAM. CODE ANN. § 161.001(2); *accord In re J.F.C.*, 96 S.W.3d at 266.

## SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review

"Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them." *In re L.J.N.*, 329 S.W.3d 667, 671 (Tex. App.—Corpus Christi 2010, no pet.) (citing *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent. *Id.* (citing *In re D.S.P.*, 210 S.W.3d 776, 778 (Tex. App.—Corpus Christi 2006, no pet.).

An order terminating parental rights must be supported by clear and convincing evidence that (1) the parent has committed one of the grounds for involuntary termination as listed in section 161.001(1) of the Family Code, and (2) terminating the parent's rights is in the best interest of the child. *Id.* § 161.001(2); *In re J.F.C.*, 96 S.W.3d at 261. "There is a strong presumption that the

best interest of a child is served by keeping the child with its natural parent, and the burden is on the [Department] to rebut that presumption." *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The same evidence of acts or omissions used to establish grounds for termination under section 161.001(1) may be probative in determining the best interest of the child. *Id.*

When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005). If the court "determines [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true," the evidence is legally sufficient. *See In re J.L.*, 163 S.W.3d at 85; *In re J.F.C.*, 96 S.W.3d at 266.

Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *accord In re K.R.M.*, 147 S.W.3d 628, 630 (Tex. App.—San Antonio 2004, no pet.). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re C.H.*, 89 S.W.3d at 25.

**B.     Best Interests of the Children**

A trial court may terminate a parent's rights to a child if it finds, inter alia, such "termination is in the best interest of the child." TEX. FAM. CODE ANN. § 161.001(2); *accord In re J.F.C.*, 96 S.W.3d at 261.

*1.    Evidence Regarding the Children's Best Interests*

Applying the applicable standards of review for sufficiency of the evidence, we examine all the evidence, *see In re J.F.C.*, 96 S.W.3d at 266; *see also City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005) (crediting or disregarding evidence), and recite below the evidence that especially pertains to the *Holley* factors, *see Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).  The trial court heard testimony from the following witnesses:

a.   B.J.D.

B.J.D. testified telephonically from Wisconsin, where he had lived for the prior nine months.  B.J.D. acknowledged, in March of 2009, he was adjudicated by a Wisconsin court for criminal sexual assault of a child.  After his adjudication, he moved to Texas to live with his grandmother.  There was extensive questioning regarding whether B.J.D. registered as a sex offender when he arrived in Texas.  He acknowledged that he had not; B.J.D. contended that because of his age at the time of the adjudication, he was not actually guilty of the offense, and therefore, refused to register with the sex offender registry.  *See In re D.M.*, 452 S.W.3d 462, 472 (Tex. App.—San Antonio 2014, no pet.).  With regard to other offenses, B.J.D. acknowledged he was also arrested for felony Failure to Stop and Render Aid.

B.J.D. was notified in March of 2015 that J.R.S. was in the Department's custody. Although he was the alleged father, he originally contested paternity and he was not adjudicated as J.R.S.'s father until February 20, 2015.  B.J.D.'s service plan allowed for bi-weekly visitation by Skype.[1]  During his testimony he acknowledged missing the last four visits, but expressed several excuses for his absences.

> I have tried to call and make visits, either they were refused or they were missed calls.  I have done everything in my power to make everything happen and I feel

---

[1] A conversation over an internet, video-phone service.

> like everything I do just isn't enough.  Every time I finish something, there is just something else I've got to do, and I have done it to the fullest extent.

B.J.D. could not provide the trial court with any substantive information about his daughter.  He knew her birthday and that she liked to run around the house in circles.  When asked what he talked about during his visits, he claimed to read to her and try to convince her to use the toilet.  B.J.D. professed being "stuck" in Wisconsin on "medical leave" due to a blood clot in his brain and was awaiting a Social Security disability claim.  He further acknowledged having only seen J.R.S. in person once in her entire life.

B.J.D. did not have permanent housing and relied on SNAP[2] benefits for his daily needs.  He testified that he had not provided J.R.S. with any financial support.  Although he contended he had several certificates of completed services in his possession, the certificates had not yet been mailed to his caseworker.

        b.    <u>Robert Fugate, Corrections Program Specialist with the Wisconsin Department of Sex Offender Registry</u>

Robert Fugate also testified telephonically from Wisconsin.  Fugate explained B.J.D. was found guilty, as a juvenile in Washington County Circuit Court, of first-degree sexual assault of a child.  The conviction required B.J.D. to register as a sex offender until November 29, 2021.  Fugate testified there was a current warrant out for B.J.D.'s arrest for failure to comply with the Wisconsin sex offender registry.  B.J.D. allegedly failed to provide the following information to registry: his residence, current employment, current school, and any volunteer work in which he was participating.  In B.J.D.'s case, as a condition of his probation, the Sex Offender Registry mailed letters to the last known address.  B.J.D. was required to respond within ten days and had

---

[2] The Supplemental Nutritional Assistance Program in Wisconsin.

failed to do so. When questioned, Fugate confirmed this provision applied whether B.J.D. resided in Wisconsin or Texas.

        c.        <u>Dina Noxson, Caseworker</u>

Dina Noxson, J.R.S's caseworker, testified it would be in J.R.S.'s best interests for B.J.D.'s parental rights to be terminated. She also testified as follows.

        (1)        Protection of the Children

J.R.S. was originally referred to the Department for neglectful supervision and physical neglect on November 14, 2014. Noxson testified the previous sexual abuse to which B.J.D. plead guilty, was the sexual assault of a young child. J.R.S. was only two years old at the time of the hearing, and Noxson expressed concern for her safety. *See In re D.M.*, 452 S.W.3d at 473 ("In some circumstances, evidence of even one Holley factor may be sufficient.").

        (2)        Support, Care for Children

Noxson further opined that throughout the duration of the case, B.J.D. failed to demonstrate he could provide a safe and stable home for J.R.S. He was living in a "structured home" at the time, but it was not a permanent solution. Noxson also addressed whether B.J.D.'s grandmother, in Texas, was a suitable placement. According to Noxson, B.J.D.'s grandmother suffered from severe anxiety and depression and the grandmother further expressed that placement in her home was not a viable option.

B.J.D. was clearly unable to provide any financial stability for J.R.S. Neither he nor his family provided any financial support or clothing for J.R.S.'s care. He further could not demonstrate an understanding of J.R.S.'s emotional and physical needs. In fact, Noxson testified B.J.D. missed sixteen Skype visits over the previous four months.

### (3)     Other Factors

Noxson averred that B.J.D. had completed his service plan; yet, B.J.D.'s service plan was severely restricted by B.J.D.'s presence in Wisconsin where most services could not be provided. In particular, B.J.D. had a history of drug use, but Noxson could not send him for drug rehabilitation in Wisconsin. She stressed that B.J.D.'s visitation, even via internet, was not consistent. Additionally, Noxson expressed concern that although B.J.D. originally admitted his guilt on the sexual assault charge, he now denied the allegations.

Finally, Noxson testified that her future plans for J.R.S. included potential adoption by the foster parents. The foster parents took possession of J.R.S. on November 23, 2013, based on Rachel's request that they do so. J.R.S. had been in their custody since that time and they had provided her a stable, loving, and supportive environment. Although they were originally reluctant to care for the child, Noxson testified they referred to J.R.S. as their "Ray of Sunshine" and had stated their willingness to adopt J.R.S. J.R.S. was adjusting well to her placement and Noxson was pleased that the foster parents arranged for monthly sibling visits with J.R.S.'s sister in San Diego, Texas.

## C.     *Holley* Factors

The jury is the sole judge of the weight and credibility of the evidence, including the testimony of the Department's witness. *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (requiring appellate deference to the fact-finder's findings); *City of Keller*, 168 S.W.3d at 819. The factors a fact-finder uses to ascertain the best interest of the children were set forth in *Holley*, 544 S.W.2d at 371–72; *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors). The *Holley* Court warned that "[t]his listing is by no means exhaustive, but does indicate a number of considerations which either have been or would appear to be pertinent." *Id*. at 372. We address the major issues faced by the jury below.

*1.    The Desires of the Child*

Here, J.R.S. was only two years old at the time of the hearing.  As such, she could not express an opinion.

*2.    The Emotional and Physical Needs of the Child and Protecting the Child from Danger Now and in the Future*

J.R.S. was removed for neglectful supervision and physical neglect.  Although B.J.D. professed his attempts to comply with the Department's request, he had failed to provide any semblance of a stable environment or evidence that he could financially support J.R.S. Additionally, B.J.D.'s refusal to register as a sex offender or take responsibility for his previous criminal actions, was also of great concern.  This was especially relevant in light of the previous charges involving the sexual assault of a small child.  *See In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth, 2003, no pet.) ("[A]busive or violent conduct by a parent or other resident of a child's home may produce an environment that endangers the physical or emotional well-being of a child.").

The evidence substantiated that, throughout the pendency of this case, B.J.D.'s actions showed his inability to care for his emotional and physical needs, much less those of J.R.S. B.J.D.'s criminal history provided further evidence of an inability protect J.R.S. either now or in the future or that the existing parent-child relationship is a proper one.

*3.    B.J.D.'s abilities*

The evidence was also sufficient to find B.J.D.'s abilities were severely limited.  B.J.D. was twenty-three years old at the time of the hearing.  The evidence supported that he consistently failed to exercise good judgment.  Not only did he plead guilty to aggravated sexual assault of a child, but then refused to comply with the requirements to register as a sex offender.  The caseworker testified there was a need for drug rehabilitation but that by being in Wisconsin, B.J.D.

was not eligible for any of the Department's programs. Additionally, B.J.D. himself acknowledged he was also arrested for felony Failure to Stop and Render Aid. The result of that arrest was not apparent from the record. The evidence presented substantiated B.J.D. lacked the decision making skills and parental abilities to provide for and parent J.R.S. in a healthy and safe manner.

4.      *Programs Available to Assist B.J.D. to Promote the Best Interest of the Child*

The evidence clearly supported the conclusion that B.J.D. was without a support system. His presence in Wisconsin only exacerbated this issue. Although the Department attempted to make resources available, his location made such services inaccessible. Additionally, B.J.D. was adamant he did not want his rights terminated; yet, he could not provide a suitable plan for J.R.S.'s placement.

5.      *B.J.D.'s Plans for the Children and Stability of the Home*

At the time of the hearing, B.J.D. was residing in a "structured home" in Jackson, Wisconsin. This was not permanent housing and he could not provide the court with plans for a stable environment for J.R.S. Additionally, his failure to provide, at any level, for J.R.S. during the duration of this case was evidence of his future inability to do so.

**D.      Analysis**

The record clearly supports that B.J.D. failed to provide a safe and stable home for J.R.S. and his inability to appropriately care for her.

Reviewing the evidence under the two sufficiency standards, and giving due consideration to evidence that the jury could have reasonably found to be clear and convincing, we conclude the trial court could have formed a firm belief or conviction that terminating B.J.D.'s parental rights to J.R.S. was in J.R.S.'s best interests. *See In re J.F.C.*, 96 S.W.3d at 266; *see also In re H.R.M.*,

209 S.W.3d at 108. Therefore, the evidence is legally and factually sufficient to support the trial court's order. *See In re J.F.C.*, 96 S.W.3d at 266; *see also In re H.R.M.*, 209 S.W.3d at 108.

## CONCLUSION

The trial court found B.J.D. committed the statutory grounds supporting terminating his parental rights and that terminating B.J.D.'s parental rights was in J.R.S.'s best interests. B.J.D. only appealed the finding with regard to J.R.S's best interests.

Having reviewed the evidence, we conclude it was legally and factually sufficient to support the trial court's finding by clear and convincing evidence that termination of B.J.D.'s parental rights to J.R.S. was in J.R.S.'s best interests.

Accordingly, we overrule B.J.D.'s sole issue on appeal and affirm the trial court's order.

Patricia O. Alvarez, Justice